# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRYANT LEE HILL, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>    Defendant. ) | Case No. CIV-14-1164-L |

## REPORT AND RECOMMENDATION

Plaintiff, Bryant Lee Hill, seeks judicial review of the Social Security Administration's denial of supplemental security income benefits (SSI). United States District Judge Tim Leonard has referred this matter for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

## I.  Procedural Background

Plaintiff filed his second application for SSI on February 14, 2012, alleging a disability onset date of October 1, 2008. The Social Security Administration denied the application initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record (AR) [Doc. No. 11], 56-66. The Appeals Council denied Plaintiff's request for review. AR 3-8. This appeal followed.

## II.  The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. § 416.920. The ALJ first determined that Plaintiff had

not engaged in substantial gainful activity since February 14, 2012, the date of the second application. AR 58. At step two, the ALJ determined that Plaintiff has the following severe impairments: chronic obstructive pulmonary disease; chronic back pain; and dyslipidemia. *Id.* At step three, the ALJ found that none of Plaintiff's impairments meets or medically equals any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 59.

The ALJ next determined Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is able to occasionally push and/or pull, use foot controls, balance, stoop, kneel, crouch, crawl and climb stairs and ramps but cannot climb ladders. The claimant is able to perform occasional overhead reaching bilaterally and is able to frequently reach, handle, finger, and feel. The claimant requires a clean air environment and must avoid all exposure to cold, heat, wetness, humidity, irritants, vibrations, and noise.

AR. 60. At step four, the ALJ concluded that Plaintiff has no past relevant work. AR 64. At step five, the ALJ relied on the testimony of a vocational expert (VE), and found there are jobs existing in significant numbers in the national economy that Plaintiff can perform including Sales Attendant, Price Marker and Blood Donor Unit Assistant. AR 65. Thus, the ALJ found at the final step of the sequential evaluation that Plaintiff is not disabled for purposes of the Social Security Act. AR 65.

### III. Plaintiff's Claims

Plaintiff contends the ALJ erred in failing to properly "evaluate Plaintiff" at steps four and five of the sequential evaluation process. He further contends the ALJ failed to properly evaluate the medical source evidence and evidence from other sources. Finally, Plaintiff contends the ALJ erred in analyzing Plaintiff's credibility.

**IV. Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms the evidence upon which the ALJ relied, or if there is a mere scintilla of evidence supporting the decision. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**V. Analysis**

**A. The ALJ's Step Four and Step Five Evaluation**

Plaintiff challenges the ALJ's RFC formulation at step four. According to Plaintiff, the ALJ should have included limitations caused by non-severe depression in both the hypothetical question to the vocational expert (VE) and in the RFC.

On June 25, 2012, an agency psychologist, Dr. Gary Lindsay, Ph.D., completed a Psychiatric Review Technique form (PRT). AR 351-363. The PRT is used to assess mental impairments for purposes of step two (identifying severe impairments) and step three (rating severity for the listings). *See generally* 20 C.F.R. § 416.920a. The PRT addresses the B and C criteria of the Listings for mental impairments, using four categories of limitation commonly called the "paragraph B" criteria: restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; and episodes of decompensation. The paragraph C criteria are significant only if a claimant has a medically determinable chronic organic mental illness.

Dr. Lindsay considered the Listing at 12.04 for affective disorders, specifically depression, which he found to be a medically determinable impairment. AR 354. In considering the paragraph B criteria, however, Dr. Lindsay found Plaintiff to have only mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. AR 361. He further found no evidence to establish the presence of paragraph C criteria. AR 362.

Dr. Lindsay noted the medical record contains no diagnosis of mental illness, no indication that Plaintiff takes medication to alleviate symptoms of depression and no records of treatment from a mental health facility or mental health provider. AR 363.

Dr. Lindsay's findings on the PRT form are consistent with Plaintiff's testimony and the medical records from his treating physician. Plaintiff testified that he has no mental problems. AR 76. In his Reply Brief, however, Plaintiff cites some medical records from the office of his

4

treating physician that indicate a routine "depression screen" was "positive" or that depression was "present," or that Plaintiff was "tearful." Reply, No. 17 at p. 2; AR 296, 288, 363.[1]

The "depression screen" is one of four screenings listed on the medical record form used by Plaintiff's treating physician, Dr. Ronald R. Fried. Other screenings include "alcohol screen," "domestic violence screen" and "tobacco screen." *See* AR 467. It appears that Dr. Fried or a member of his staff performs these screenings routinely at every office visit. One record identifies the screening tool used for depression is the "PHQ-2 scaled." *See* AR 313. This screening tool is based on the answer to two questions asked of the patient: "

> During the past two weeks, how often have you been bothered by any of the following problems?
>
> Felt down, depressed, or hopeless?
>
> Not enjoyed or lost interest in doing things that you usually do?

AR 313. This record is dated March 9, 2012, and Plaintiff's answers to both questions were "not at all." *Id.* Some of the medical records indicate Dr. Fried performed the screening during a routine examination, and some records indicate a nurse performed the screening. *See* AR 314.

Several medical records generated during the applicable time period indicate the routine depression screening was negative. AR 313, 463, 467, and 472. But even on medical records indicating depression was present, Plaintiff consistently denied having depression or mood swings, and Dr. Fried consistently assessed Plaintiff's psychological health as "normal," noting that Plaintiff was "oriented to person, place and time" and that his mood, affect, memory and judgment were all normal. AR 459, 478. Nothing in the medical records suggests that Plaintiff is functionally limited by depression.

---

[1] The first two medical records cited by Plaintiff record the results of examination in 2011, before the application date in this case. The third is taken from the consultative examiner's notes from the PRT form under "Identifying Information." In the section of the form for "Analysis of Evidence," however, the consultative examiner deemed Plaintiff's depression and anxiety to be non-severe. AR 363.

The medical records do demonstrate Plaintiff's long-term use of Diazepam (Valium), a drug used to treat both anxiety and muscle spasms. AR 288. On July 6, 2011, six months before the application date, Dr. Fried increased the dosage of Valium to 10mg for anxiety, but he also stated, "This is a muscle relaxer so it should also help with pain." *Id*. The medical records do not clearly suggest that anxiety was a medically determinable impairment. But to the extent Plaintiff did have anxiety, it was apparently controlled by medication, as there is nothing in the record to suggest Plaintiff's anxiety was severe or resulted in work-related limitations.

The ALJ's adoption of Dr. Lindsay's PRT findings for use at steps two and three of the sequential evaluation does not necessarily translate to functional limitations that should have been included in the RFC. The PRT is "not an RFC assessment." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *4. *See also Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (finding even moderate limitations in concentration, persistence, or pace at step three do not necessarily translate to work related functional limitations for purposes of the RFC assessment).

In sum, the medical records and the findings of the state agency doctors all support the ALJ's conclusion that neither Plaintiff's depression nor his anxiety is a severe impairment. The records also support the ALJ's tacit conclusion that Plaintiff's non-severe mental impairments do not result in functional limitations. Thus, the ALJ's RFC assessment at step four, and his findings at step five are supported by substantial evidence in the record and are free of legal error.

B. **Evaluation of Medical Evidence and Other Source Evidence**

Plaintiff contends the ALJ erred in failing to properly evaluate the opinions of Plaintiff's treating physician, and in failing to properly evaluate a third party adult function report completed by Plaintiff's friend. These claims lack merit.

1. **Opinions of Treating Physician**

Plaintiff contends the ALJ erred in failing to properly evaluate the opinions of his treating physician, Dr. Fried. The opinions in question are contained in numerous letters directed "To Whom it May Concern." AR 440, 441, 444, 445, 508, 512, and 437.[2] These letters tersely describe Plaintiff's physical problems, primarily his back pain and COPD. Most of the letters conclude with Dr. Fried's opinion that Plaintiff "is totally disabled at this time." *Id.*

"An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); *see also* 20 C.F.R. § 404.1527(c)(2). When an ALJ considers a treating physician's opinion, he is required to "give good reasons in the notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks and alteration omitted). These reasons must be specific and legitimate. *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

The ALJ must follow a specific process when he determines the weight to be given to a treating physician's opinion. He "'must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques[.]'" *Mays. v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014) (citation omitted). "If the ALJ finds that the opinion is well-

---

[2] The page references are to letters written during the time period applicable to this case. The ALJ noted there were fifteen such letters, accompanied by checklists, written between 2009 and 2012. AR 63.

7

supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.'" *Id.* (citation omitted). "'If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.'" *Id.* (citation omitted). If the opinion is not entitled to controlling weight, the ALJ must nevertheless determine what lesser weight the opinion is due. He must both (1) weigh the opinion "under the relevant factors," *id*., and (2) "give good reasons in the . . . decision for the weight [the ALJ] ultimately assigns the opinion." *Watkins*, 350 F.3d at 1300-01 (internal quotation marks and alteration omitted).

The relevant regulatory factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301 (internal quotation marks omitted). So long as the ALJ provides a well-reasoned discussion, his failure to "explicitly discuss" all the factors "does not prevent [the] court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ acknowledged that a treating physician's opinion is generally accorded "a great deal of deference" and is even given controlling weight when the opinion "is supported by medically acceptable clinical and laboratory techniques, and it is not inconsistent with other substantial evidence of record." AR 64. But even though the ALJ found Dr. Fried's opinion to be "probative," he ultimately assigned it "minimal weight" based on its inconsistency with the rest of the medical record. The ALJ noted that Dr. Fried's own records demonstrate only

8

moderate degenerative changes at L5-S1, which have "never required surgery or treatment beyond medication therapy." *Id.* The ALJ noted no records show any lumbar abnormalities or objective findings of physical limitation such as range of motion or strength testing. *Id.*

As for Plaintiff's COPD, the ALJ considered the results of pulmonary function testing, AR 61-62, the results of which did not approach listing level, and Dr. Fried's medical records. Both support the ALJ's finding that Plaintiff's COPD is generally well controlled by medications. AR 64.[3] The ALJ also noted that the ultimate issue of whether a claimant is disabled is reserved to the Commissioner and that treating physician's opinions on that issue are never entitled to controlling weight. *Id. See* 20 C.F.R. § 416.927(e)(1)-(e)(3). Finally, the ALJ concluded the absence of objective medical evidence indicated that Dr. Fried's opinions were based primarily on Plaintiff's subjective complaints rather than clinical findings. AR 64.

Plaintiff contends the ALJ should have re-contacted Plaintiff's treating physician and requested that he fill out a physical residual functional capacity form. Under the governing regulations, the Commissioner must recontact a treating physician when the information he has provided is "inadequate … to determine whether [the claimant is] disabled." 20 C.F.R. § 416.912(e). But it is "not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001), as amended on denial of re'g (Apr. 5, 2002) (internal quotation marks and alterations in original) (citing 20 C.F.R. § 416.912(e)). In this case, the ALJ did not find the evidence from Dr. Fried to be so inadequate that the ALJ could not consider it. The ALJ simply

---

[3] The ALJ's RFC determination took into consideration the effects of Plaintiff's COPD and included nonexertional limitations to accommodate the results of this condition. AR 60.

found the opinion to be wrong. Thus, the ALJ had no duty to recontact Plaintiff's treating physician.

## 2. Third-Party Opinion Evidence

The ALJ considered the third party adult function report dated March 17, 2012, completed by Plaintiff's friend and made the following observations:

> This report does not establish that the claimant is disabled. Since Ms. Farris is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the report is questionable. Moreover, by virtue of the relationship as the friend of the claimant, she cannot be considered a disinterested third party whose reporting would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the report because it is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

AR 64.

Social Security Ruling 06-3p offers guidance to ALJs concerning the evaluation of evidence from non-medical sources:

> In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.

Social Security Ruling, SSR 06-03p; *Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims*.

The ALJ considered the evidence provided, and in his written findings of credibility, he applied some of the factors suggested in the applicable social security ruling. His written findings are sufficient. In fact, the Tenth Circuit has held that an ALJ is not required to make

specific written findings of credibility of lay testimony when the ALJ's decision reflects he considered the testimony. *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (the ALJ is not required to make specific written findings of each witness's credibility if the written decision reflects that the ALJ considered the testimony).

### C. The ALJ's Credibility Determination

Plaintiff's final assignment of error is that the ALJ's credibility assessment is faulty. A review of the ALJ's decision and the evidence as a whole, however, validates the ALJ's credibility analysis.

A disability claimant's complaints of disabling pain are evaluated using the analysis set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). An ALJ faced with a claim of disabling pain or other symptoms is required to consider and determine (1) whether the claimant has established the existence of an impairment that could reasonably be expected to cause the pain or other symptoms; and (2) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain or other symptoms are in fact disabling. *Id.* at 163–64.

Evidence the ALJ should consider includes such things as "a claimant's persistent attempts to find relief for his pain [or other symptoms] and his willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems" and "the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Id.* at 165–166. But so long as the ALJ "sets forth the specific evidence he relies on in evaluating the claimant's credibility," he need not make a "formalistic factor-by-factor recitation of the evidence." *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). A court should be guided by common

11

sense, not by insistence on technical perfection. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

The ALJ identified the steps of the process required to assess a claimant's credibility. AR 60. After a thorough review of the medical evidence, the ALJ noted that the issue was "not the existence of pain and respiratory problems, but rather the degree of incapacity incurred because of same." AR 62. The ALJ concluded that the "minimal findings in evidence" did not reasonably support the degree of pain and respiratory symptoms alleged. *Id.* He found Plaintiff's routine to be restricted by choice rather than disability. AR 63. In support of his conclusion, the ALJ cited Plaintiff's ability to attend to his personal care without assistance and his daily activities including caring for his dogs, preparing simple meals, doing light housework and chores, driving a vehicle, paying bills, using a bank account, attending medical appointments, obtaining refilled prescriptions, watching television and visiting with others as examples of activities inconsistent with the alleged disabling impairments. *Id.* The ALJ also stated he had found Plaintiff's appearance and demeanor to be unpersuasive. *Id.*

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). *See also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010). Because the ALJ's credibility findings are supported by substantial evidence in the record as a whole, this issue does not warrant reversal and remand.

## **RECOMMENDATION**

In sum, the ALJ's step four and step five findings are supported by substantial evidence and free of legal error. The ALJ properly evaluated the medical source opinions as well as the

opinions from other sources. Finally, the ALJ's decision reflects sufficient consideration of Plaintiff's subjective allegations of pain and respiratory symptoms, and the credibility findings are supported by substantial evidence.

It is therefore recommended that the Commissioner's final decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by December 15, 2015. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 1st day of December, 2015.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE